In re Stephen & Ruth
RUSHING, Debtors.

**Bankruptcy No. 88–04377.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Nov. 23, 1988.

---

Donald M. Walton, Asst. U.S. Trustee Atlanta, Ga., for plaintiff.

Thomas McPherson, Pensacola, Fla., for debtor.

John E. Venn, Jr., Gulf Breeze, Fla., trustee.

## MEMORANDUM OF OPINION

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS MATTER came before the Court for hearing on October 17, 1988, on the motion of the United States Trustee to dismiss pursuant to § 707(b) of the Bankruptcy Code. The debtors appeared and requested additional time to revise their schedule of current income and expenses and to file a written response to the United States Trustee's motion. The Court granted the debtors an additional twenty (20) days to make whatever amendments they felt necessary and to respond to the United States Trustee's motion. On November 16, 1988, well after the twenty (20) days granted by the Court, the debtors moved for an additional twenty (20) days to enable them to resolve certain discrepancies in their figures and to determine whether a Chapter 11 plan would be a viable solution. For the following reasons, the debtor's belated motion for additional time will be denied and this case will be dismissed for substantial abuse pursuant to § 707(b) of the Bankruptcy Code.

This case was filed on April 7, 1988 as a Chapter 7. The schedule of debts reflect a total of $34,914.00 unsecured claims and $24,534.45 in secured claims. All of the unsecured claims scheduled by the debtors are consumer debts, and of the $24,534.45 in secured claims scheduled, $7,576.50 of that is for a 1986 15½′ ski boat. The remaining $16,957.95 in secured debt is for a mobile home. The schedule of current income and expenses filed by the debtors reflects that the husband's gross income is $457.01 per week and the wife's gross income is $608.80 bi-weekly. After deduc-tions for payroll taxes, insurance and other payments deducted from the debtors' paychecks, the respective net take home pay per pay period for each of the debtors was $227.37 for the husband and $413.96 for the wife. The monthly pay was then computed to reflect $909.48 per month for the husband and $827.92 for the wife. In arriving at the net take home pay per month, the debtors merely multiplied the husband's weekly take home pay by four (4) and the wife's bi-weekly take home pay by two (2) to arrive at the net monthly figures. This approach however results in a significant understatement of the debtor's net monthly take home pay. Based on the Court's independent calculations, the combined net monthly take home pay of the joint debtors as scheduled should be $1,882.18. The debtors have also scheduled as deductions from their gross pay the sum of $38.25 per week from the husband's pay for payments on the boat and $59.50 bi-weekly from the wife's pay for payments to a credit union. Those deductions represent payments on pre-petition debt which we feel should be added back into the net available income prior to deducting living expenses. On a monthly basis, those deductions total $294.67 which when added to the $1,882.18 results in a net available monthly take home pay of $2,176.85.

The monthly expense schedule reflects total monthly living expenses of $1,096.57. Included in the monthly living expenses are $20.42 per month insurance on the boat and $80.00 for recreation. Even with the boat insurance and recreation included in the monthly expenses, the difference between the debtors' monthly take home pay and their monthly expenses is approximately $1,080.00, which if paid to a Chapter 13 trustee or otherwise made available to creditors over a 36 month period would be sufficient to pay 100% of the unsecured claims.

At hearing on this motion, the debtors indicated that they did not have sufficient income to pay all of their creditors but that they were continuing to make payments to certain creditors. They have also filed a

**752**

reaffirmation agreement reaffirming the claim secured by the ski boat.

Under these facts, we find that granting these debtors relief under Chapter 7 would be a clear abuse of the provisions of the Bankruptcy Code. These debtors seek to discharge a substantial number of consumer claims, have the ability and have demonstrated an intent to maintain their current lifestyle which includes keeping an expensive boat used solely for recreational purposes, and paying only those creditors which they choose to pay. The principal factor to be considered in determining substantial abuse under § 707(b) is the debtors' ability to pay all or substantially all of the debts for which discharge is sought. *In re Kelly*, 841 F.2d 908 (9th Cir.1988). These debtors clearly have the ability to make substantial payment on their unsecured claims even by continuing to retain their ski boat, and without the boat, they have the ability to pay 100% of their unsecured claims.

If the debtors desire to utilize the provisions of another chapter under the Bankruptcy Code to enable them to obtain relief while still making payments to their creditors, they may do so by filing a subsequent petition following dismissal of this case. However, the fact that they are considering conversion to another chapter is not sufficient cause to grant the untimely request for additional to comply with the Court's direction that they respond within twenty (20) days following the October 17 hearing. Accordingly, the debtors' "Motion to Continue" will be denied. A separate order will be entered dismissing the case and denying the debtors' motion to continue.

DONE AND ORDERED.