**In the Matter of Barbara K. DUBBERKE, Debtor.**

**Bankruptcy No. 90–380–C.**

United States Bankruptcy Court, S.D. Iowa.

Oct. 5, 1990.

James H. Cossitt, Ames, Iowa, for debtor.

John Waters, Des Moines, Iowa, for U.S. Trustee.

Anita L. Shodeen, Des Moines, Iowa, Chapter 7 Trustee.

## RULING ON TRUSTEE'S MOTION TO DISMISS

RUSSELL J. HILL, Bankruptcy Judge.

A hearing was held on June 11, 1990, on the U.S. Trustee's motion to dismiss. James H. Cossitt appeared on behalf of the Debtor and John Waters appeared on behalf of the U.S. Trustee. At the conclusion of the hearing, the Court took the matter under advisement and now considers it fully submitted.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court, upon review of the motion, resistance, evidence submitted and arguments of counsel, now enters its findings and conclusions pursuant to Fed.R.Bankr.P. 7052.

### FINDINGS OF FACT

1. Debtor filed her voluntary petition for Chapter 7 bankruptcy relief on February 13, 1990.

2. Debtor has two secured creditors who hold $43,153.99 in claims. These claims are secured by collateral valued at $43,000.00.

3. Debtor's bankruptcy schedules list seven unsecured creditors who hold $13,-100.33 in unsecured claims.

4. Debtor's schedule of current income and current expenditures states Debtor has monthly income of $1,829.00 and expenses of $1,460.00.

5. On May 17, 1990, the U.S. Trustee filed a motion to dismiss pursuant to 11 U.S.C. § 707(b).

6. In its motion the U.S. Trustee claims Debtor is eligible for Chapter 13 relief and has sufficient monthly disposable income from which she could pay all of her unsecured debts. The U.S. Trustee asserts Debtor's monthly expenses are only $1,269.00 and that Debtor has erroneously included $191.00 of dischargeable monthly charge card and loan payments in her list of current expenditures.

7. On June 5, 1990, Debtor filed a resistance to the motion to dismiss.

8. In conjunction with her resistance to the motion to dismiss, Debtor filed an affidavit and a "Schedule of Actual Income and Actual Expenses For January–May 1990" (Debtor's Exhibit 1).

9. Debtor's Exhibit 1 indicates Debtor terminated her part time employment June 2, 1990, and her monthly income is $1,515.56. This exhibit also states Debtor's monthly expenses are $1,415.47.

### DISCUSSION

The U.S. Trustee's motion to dismiss is based upon 11 U.S.C. § 707(b) which provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Enacted in 1984, this section has been the subject of widely diverging judicial interpretations. Substantial abuse is not defined in the Bankruptcy Code nor in the legislative history accompanying the Bankruptcy Amendments and Federal Judgeship Act. Some courts have taken an expansive view of § 707(b) and find substantial abuse in any case where it is established the debtor has the ability to pay a significant portion of his or her debts. *See In re Kelly*, 841 F.2d 908, 914–15 (9th Cir.1988) (and cases cited therein).

Other courts take a more narrow and restricted view of § 707(b) and hold the ability to pay creditors or fund a Chapter 13 plan is not in and of itself sufficient to establish substantial abuse. *See In re Wegner*, 91 B.R. 854, 858 (Bankr.D.Minn. 1988); *In re Deaton*, 65 B.R. 663, 665 (Bankr.S.D.Ohio 1986). Such courts typically require evidence of misconduct, impropriety or lack of good faith in order to reach a finding of substantial abuse. *See Wegner*, 91 B.R. at 858; *see also In re Shands*, 63 B.R. 121, 124 (Bankr.E.D.Mich.

1985) (ability to pay 100% of debts within three years when coupled with some "egregious circumstance" can trigger finding of substantial abuse).

Several courts have indicated the following criteria should be considered when determining whether substantial abuse exists in a particular case:

1. Whether the debtor has a likelihood of sufficient future income to fund a Chapter 13 plan which would pay a substantial portion of the unsecured claims;

2. Whether the debtor's petition was filed as a consequence of illness, disability, unemployment or some other calamity;

3. Whether the schedules suggest the debtor incurred cash advances and consumer purchases in an excess of his or her ability to repay them;

4. Whether the debtor's proposed budget is excessive or extravagant;

5. Whether the debtor's statement of income and expenses is misrepresentative of his or her true financial condition.

*In re Day,* 77 B.R. 225, 227 (Bankr.D.N.D. 1987); *In re Gyurci,* 95 B.R. 639, 642 (Bankr.D.Minn.1989); *In re Herbst,* 95 B.R. 98, 101 (W.D.Wis.1988).

The Eighth Circuit has concluded that in making a substantial abuse determination courts are not foreclosed from considering a debtor's ability to pay his or her debts out of future income. *In re Walton,* 866 F.2d 981, 983 (8th Cir.1989). The court relied on legislative history which suggests § 707(b) upholds creditors' interests in obtaining repayment where such repayment would not be a burden on the debtor. *Id.*

■ Economic criteria will be important to a substantial abuse determination and debtors that are "not needy" may be dismissed pursuant to § 707(b) despite their honesty and good faith in filing. *See id.* However, the Eighth Circuit has not yet adopted the view that a debtor's ability to pay his or her debts will alone support a finding of substantial abuse. In fact, the court in *Walton* suggested a court may take into consideration factors other than a debtor's ability to fund a Chapter 13 plan.

It specifically noted that a petitioner's good faith and unique hardships are relevant concerns under § 707(b). *Id.*

Relying on *Walton,* the Bankruptcy Court in the Northern District of Iowa recently dismissed a case for substantial abuse. In *In re Palmer,* 117 B.R. 443 (Bankr.N.D.Iowa, 1990), Judge Melloy concluded a debtor's ability to fund a Chapter 13 plan, a lack of candor in the debtor's scheduling of income and expenses, and the debtor's suspect motive in filing bankruptcy warranted dismissal pursuant to § 707(b).

■ There is a statutory presumption in favor of granting the relief sought by the debtor. The presumption that a debtor is entitled to Chapter 7 relief is not conclusive and may be rebutted. *Matter of Strong,* 84 B.R. 541, 544 (Bankr.N.D.Ind. 1988). The trustee bears the burden of showing substantial abuse. *Matter of Woodhall,* 104 B.R. 544, 545 (Bankr.M.D. Ga.1989). The question of whether or not substantial abuse exists can only be determined on a case-by-case basis after considering the totality of the circumstances, bearing in mind that the basic purpose of Chapter 7 is to provide the honest debtor with a fresh start. *Matter of Ploegert,* 93 B.R. 641, 642 (Bankr.N.D.Ind.1988); *see also In re Herbst,* 95 B.R. at 101 (court must consider all facts and circumstances which may tend to aggravate or mitigate the abusiveness of a filing).

■ Debtor's original schedule of income and expenses indicated she had $369.00 a month in disposable income. As the trustee correctly pointed out, Debtor's schedule incorrectly listed three dischargeable monthly debts in her list of expenditures. Removal of these debts from Debtor's original schedule of expenditures reveals the availability of $560.00 a month in disposable income. This substantial amount of disposable income could fund a Chapter 13 plan in which Debtor could pay off all of her unsecured creditors under a three-year plan.

When faced with a motion to dismiss for substantial abuse, Debtor submitted what she captioned a "Schedule of Actual Income and Actual Expenses for January–

May 1990." This document reveals a significant reduction in Debtor's estimated level of income and an increase in her level of expenditures. The Court has compared Debtor's original and modified schedules and has several reservations about the accuracy of the figures submitted by Debtor.

At the outset this Court must register its concern about Debtor's decision to voluntarily reduce her income by terminating her part time employment. Debtor held part time employment for most of 1989 and was able to bring in nearly $3,000.00 in additional income. Debtor's proffered motive for quitting her part time job—to devote more time to her son at home—does not seem plausible in light of her son's age. It seems more likely that Debtor quit her part time position in order to undercut the Trustee's contention that she has the ability to fund a Chapter 13 plan.

■ Aside from the Court's views about Debtor's motive for quitting her second job, this court is justifiably concerned about the increased level of expenses she lists in Exhibit 1. *See In re Peluso,* 72 B.R. 732, 738 (Bankr.N.D.N.Y.1987) (scrutiny of court is drawn to debtor's increased estimates of monthly obligations in § 707(b) motion to dismiss). The Debtor has a duty to file a schedule of current income and expenditures. 11 U.S.C. § 521(1). All schedules filed with the Bankruptcy Court must be verified or contain an unsworn declaration of truth pursuant to Fed.R.Bankr.P. 1008. The bankruptcy laws impose a strict obligation on debtors to file complete and accurate schedules. *Matter of Bayless,* 78 B.R. 506, 509 (Bankr. S.D.Ohio 1987); *see also In re Fauchier,* 71 B.R. 212, 215 (Bankr. 9th Cir.1987) (burden is on debtors to use reasonable diligence in completing their schedules and lists); *In re Lunday* 100 B.R. 502, 508 (Bankr.D.N.D. 1989) (debtor is to prepare complete, thorough and accurate schedules); *In re Cook,* 40 B.R. 903, 907 (Bankr.N.D.Iowa 1984) (debtor's role in answering questions on statement of affairs is to consider them carefully and answer them completely and accurately).

On Exhibit 1 Debtor's expenses are $146.47 more than she listed on her original schedule of current income and expenditures. A comparison of the two documents indicates Debtor has estimated significantly higher food and transportation costs than she did on her original schedule. On Exhibit 1 Debtor explains the increases are due to her employment in a second job. In light of the fact that Debtor knew she was quitting her second job effective June 2, 1990, it is incredulous that Debtor would present these inflated food and transportation expenses to the court as evidence of her actual financial condition. Debtor's decision to terminate her second job destroys her justification for these significant increases in her monthly expenditures.

The accuracy of Debtor's modified schedule of income and expenses is further brought into doubt by her proposal to voluntarily repay certain creditors. In her resistance Debtor (relying on her modified schedule) states she has only $100.00 per month in disposable income which would yield only $3,600.00 over three years for a Chapter 13 plan. To prove that her Chapter 7 filing is not a substantial abuse Debtor points to her intention to voluntarily repay three specified creditors a total of $3,650.60. Debtor emphasizes that her intended voluntary repayments would *exceed* the amount of disposable income available for distribution to unsecured creditors under Chapter 13.

While it is a debtor's prerogative to voluntarily repay discharged debts, 11 U.S.C. § 524(f), Debtor fails to recognize that if she envisions she has the ability and disposable income to voluntarily repay an amount greater than that available under a Chapter 13 plan, then the schedule she has submitted to the Court must either overstate her expenses or underestimate the level of income she will have available to her.

Debtor's own exhibit and her post petition conduct belie her assertion that she is unable to fund a meaningful repayment plan under Chapter 13. While asserting she has only $100.00 a month in disposable income, Debtor's Exhibit 1 indicates she has made $864.00 in post petition payments to pre-petition creditors. These payments reveal an ability to repay a monthly average of $172.00 to her creditors. It is evident Debtor's monthly disposable income exceeds $100.00.

This Court also notes that Debtor's desire to repay only certain creditors is a factor to be considered in determining if her Chapter 7 filing constitutes a substantial abuse of the provisions of Chapter 7. *See In re Rushing*, 93 B.R. 750, 752 (Bankr.N.D.Fla.1988); *Matter of Antal*, 74 B.R. 8, 9 (Bankr.W.D.Mo.1987) *vacated on other grounds*, 85 B.R. 838 (Bankr.W.D. Mo.1988). The preference of certain creditors over others offends the paramount goal of bankruptcy—that of equality of treatment of creditors. *Antal*, 74 B.R. at 9.

After reviewing the record, this Court concludes Debtor's current monthly income is $1,515.56. Debtor's decision to voluntarily terminate her second job reduced her level of income, but it also negated most of the increased expenditures Debtor set forth in Exhibit 1. Therefore, it is this Court's conclusion that Debtor's original list of expenditures more accurately reflects Debtor's financial position. Accordingly, Debtor's monthly income ($1,515.56) less her monthly expenditures ($1,269) results in a disposable monthly income of $246.56. Under a three-year Chapter 13 plan, this could result in payments of over 60% of Debtor's unsecured debts; under a five-year plan it could provide for 100% payment of Debtor's unsecured creditors.

It is this Court's conclusion that the trustee has met its burden of proving substantial abuse. Debtor has the ability to pay all or substantially all of her unsecured debts. She has clearly indicated a preference to pay certain creditors at the expense of others. Both schedules of income and expenses submitted by Debtor were manipulated to some extent to portray payments to these preferred creditors as monthly expenses, thus reducing the apparent amount of monthly disposable income Debtor has available to pay her other creditors. Finally, it is this Court's belief that Debtor's asserted intention to voluntarily repay several of her creditors in full indicates Debtor's schedules do not accurately reflect her income, expenses, or ability to fund a Chapter 13 plan.

Debtor has requested that the entry of a judgment of dismissal be delayed for a period of ten days after the Court's decision is rendered. Debtor has offered no reason for this request nor has she demonstrated that this situation warrants a stay of the entry of judgment. Debtor's request is denied.

## ORDER

WHEREFORE, based on the foregoing analysis, the Court concludes sufficient reasons exist for granting the Trustee's motion to dismiss.

IT IS ACCORDINGLY ORDERED that Debtor's case is dismissed pursuant to 11 U.S.C. § 707(b).

LET JUDGMENT ENTER ACCORDINGLY.