**In re Mark Carl VEENHUIS, Debtor.**

**Bankruptcy No. 4-92-806.**

United States Bankruptcy Court,
D. Minnesota.

Aug. 21, 1992.

Robert Anderson, Joseph Dicker & Associates, Minneapolis, Minn., for debtor.

Michael Fadlovich, Office of the U.S. Trustee, Minneapolis, Minn., for U.S. Trustee.

## MEMORANDUM ORDER DISMISSING CASE

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 6th day of May, 1992, on the United States Trustee's motion to dismiss under 11 U.S.C. § 707(b). Appearances were as follows: Robert Anderson for the debtor, and Michael Fadlovich for the U.S. Trustee.

### STATEMENT OF FACTS

The debtor is an individual employed as a mechanic for Comfort Bus Co. His available monthly income after deductions is $1,148.34 and his monthly expenses are $1,300.43, according to his amended schedules I and J, leaving a negative monthly cash flow of $152.09. Included in the debtor's expenses are $170.00 child support, $85.43 payment on a boat loan, $40.00 for a cellular telephone, and expenses incurred by the individual the debtor lives with and her son.

The only significant assets owned by the debtor are an automobile valued at $1,000.00, a savings account containing $3,400.00, and $500.00 worth of equity in a boat valued at $2,750.00. The debtor claims all of these assets as exempt.

The debts listed in the debtor's schedules are entirely consumer debts. In fact, there are only two debts listed and they both arise out of loans for purchases of recreational boats. The first of these boat loans was from First Bank, N.A., but the debtor failed to maintain payments on the loan so the boat was repossessed. First Bank then brought a collection action against the debtor and a codefendant, and obtained a judgment on November 8, 1991 in the amount of $3,296.29. On November 18, 1991 a writ of execution was issued, and on or about January 24, 1992 the debtor's savings account was attached and a notice of garnishment was issued to his employer.

The second boat loan was procured through Minnie-Mine Credit Union subsequent to losing the first boat. The debtor currently owes $2,250.00 on this second

boat loan, has listed the monthly payment of $85.43 in his schedule of expenses, and has stated his intention to reaffirm the debt.

This bankruptcy petition was filed on January 30, 1992 in response to the attachment of the debtor's savings account and notice of garnishment.

## CONCLUSIONS OF LAW

The U.S. Trustee's motion to dismiss is brought under section 707(b) of the Bankruptcy Code which provides in relevant part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, ... may dismiss a case filed by an individual debtor under [chapter 7] whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). Section 707(b) provides no definition for the term "substantial abuse," so the courts have routinely looked to the policies underlying enactment of the section when deciding whether granting relief to a particular debtor would be a substantial abuse of the provisions of chapter 7. In doing so, the courts have generally concluded that section 707(b) was meant to deny chapter 7 relief to debtors who are either dishonest or non-needy. *See In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) (hereinafter *Krohn II*); *In re Walton*, 866 F.2d 981, 983 (8th Cir.1989). Therefore, the court must ascertain whether the debtor is "merely seeking an advantage over his creditors, or instead is 'honest,' in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is 'needy' in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." *Krohn II*, 886 F.2d at 126.

According to the Eighth Circuit, the primary factor in determining whether granting a discharge would be a substantial abuse is the debtor's ability to fund a chapter 13 plan. *Walton*, 866 F.2d at 984–85; *U.S. Trustee v. Harris (In re Harris)*, 960 F.2d 74, 77 (8th Cir.1992) (both citing *In re Kelly*, 841 F.2d 908 (9th Cir.1988). The debtor in the present case argues that since the ability to fund a chapter 13 plan is the primary focus of the U.S. Trustee's 707(b) motion, the motion should be denied because the debtor has no positive cash flow to fund a chapter 13 plan.

If the ability to fund a chapter 13 plan out of future income were the *only* factor to consider then the debtor's argument would most likely prevail. Although the debtor has a steady job, he currently has a negative monthly cash-flow of $152.09. The U.S. Trustee argues that the debtor's cellular telephone bill and boat payment appear to be unnecessary luxuries that could be eliminated to reduce expenses. However, even without these expenses the debtor would still have a negative monthly cash-flow of $26.66. The U.S. Trustee also indicated that the debtor's clothing and food expenses appeared excessive, but the debtor's amended schedules reflect reasonable expenses ($175/month for food, and $40/month for clothing) and still the debtor's cash-flow is negative.

The debtor's argument, however, is fundamentally flawed because there is nothing in either *Harris* or *Walton* that suggests that the ability to fund a chapter 13 plan out of future earnings is the *only* factor to consider. On the contrary, the *Walton* court expressly stated that "the court may take the petitioner's good faith and unique hardships into consideration under section 707(b)." *Walton*, 866 F.2d at 983. Furthermore, both *Harris* and *Walton* cited with approval language from *In re Kelly*, 841 F.2d 908 (9th Cir.1988), stating that the inability to fund a chapter 13 plan out of future earnings will not "shield a debtor from section 707(b) dismissal where bad faith is otherwise shown." *Harris*, 960 F.2d at 76; *Walton*, 866 F.2d at 985. To hold otherwise would defeat section 707(b)'s goal of denying a discharge both to debtors who are non-needy *and* those who are dishonest. The *Walton* court rejected an interpretation of section 707(b) that

would have equated substantial abuse with bad faith, prohibiting any consideration of future income and ability to fund a chapter 13 plan. The court stated that such a cramped interpretation would impair the bankruptcy court's ability to dismiss cases filed by debtors who, although not dishonest, are not needy. *Walton*, 866 F.2d at 983. To hold as the debtor would have me, that the inability to fund a chapter 13 plan prevents dismissal without consideration of any bad faith on the debtor's part, would have a similar effect; it would impair the ability of the bankruptcy courts to dismiss cases under 707(b) where the debtors, although needy, are dishonest.

■ The question whether a case should be dismissed under section 707(b) based on a debtor's bad faith is a subjective determination that must be made on a case-by-case basis. *In re Ploegert*, 93 B.R. 641, 642 (Bankr.N.D.Ind.1988); *In re Herbst*, 95 B.R. 98, 101 (W.D.Wis.1988); *In re Dubberke*, 119 B.R. 677, 679 (Bankr.S.D.Iowa 1990). Factors considered by some courts to be indicative of bad faith include (1) use of chapter 7 to discharge a single debt which the debtor does not wish to pay, *In re Busbin*, 95 B.R. 240, 246 (Bankr.N.D.Ga. 1989); (2) failure to make a sincere attempt at repaying obligations, *In re Krohn*, 87 B.R. 926, 929 (N.D.Ohio 1988) (hereinafter *Krohn I*); (3) desire to repay only certain creditors, *Dubberke*, 119 B.R. at 681; (4) tying up significant liquid value in superfluous exempt assets, *In re Higginbotham*, 111 B.R. 955, 965 (Bankr.N.D.Okla.1990); and (5) financial troubles caused by past excesses rather than any unforeseen calamity, *Ploegert*, 93 B.R. at 643; *Krohn I*, 87 B.R. at 929.

■ On the facts before me I conclude that this debtor has acted in bad faith. The debtor seeks to discharge a single debt in this case; that of First Bank for the money lent to purchase his prior boat. I have seen no evidence whatsoever that the debtor has made any sincere effort to repay the debt. On the contrary when First Bank garnished the debtor's savings account, which would have been sufficient to repay the debt, the debtor responded by filing this bankruptcy petition. Rather than attempting to satisfy the debt to First Bank, the debtor has selectively chosen to pay Minnie–Mine Credit Union over First Bank in order to retain his second boat. He intends to tie up $85.43 of future income per month in paying for a superfluous exempt asset; such income would go a long way towards satisfying the debt to First Bank. Finally, the debtor's predicament has not been caused by any unforeseen calamity, but rather by his desire to own an expensive recreational boat which he cannot afford.

The debtor is simply using the bankruptcy court to exchange a boat he couldn't afford for one that he can. The debtor was either unable or unwilling to make the payments on his prior boat, so he allowed it to be repossessed then got another loan and purchased another boat. Then when the creditor who financed the first boat obtained a personal judgment against the debtor, the debtor filed a petition under chapter 7 seeking solely to discharge his debt to that creditor and to retain the second boat reaffirming his debt thereon. Thus, the end result is that the debtor is attempting to swap boats, making payments on the second boat to the detriment of the creditor that financed the first boat. Bad faith is determined on a case-by-case basis and the manner in which the debtor is attempting to use the protections of the Bankruptcy Code in this case constitutes bad faith.

Although section 707(b) creates a presumption in favor of the debtor, the facts of this case are sufficient to rebut such presumption. The debtor has acted in bad faith and cannot take refuge from dismissal in his inability to fund a chapter 13 plan.

ACCORDINGLY, IT IS HEREBY ORDERED: This case is DISMISSED under 11 U.S.C. § 707(b).